## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

**DONNA RAY MANLEY,**

      **Plaintiff,**

**vs.**                                    **CIVIL ACTION NO. 2:17-CV-02293**

**NANCY A. BERRYHILL,**
**ACTING COMMISSIONER OF**
**SOCIAL SECURITY,**

      **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's applications for Disability Insurance Benefits (DIB) under Title II and for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Order entered April 12, 2017 (Document No. 4.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are Plaintiff's Brief in support of Judgment on the Pleadings and Defendant's Brief in Support of Defendant's Decision. (Document Nos. 12 and 13.)

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** Plaintiff's request for judgment on the pleadings (Document No. 12.), **GRANT** Defendant's request to affirm the decision of the Commissioner (Document No. 13.); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this action from the docket of the Court.

**Procedural History**

The Plaintiff, Donna Ray Manley (hereinafter referred to as "Claimant"), protectively filed her applications for Titles II and XVI benefits on November 6, 2013, alleging disability since August 1, 2010, because of "chronic obstructive pulmonary disease (COPD), severe depression, bipolar disorder, arthritis, panic disorder, Hep[atitis] C, back problems, and a heart murmur." (Tr. at 345, 351, 447.) Adjudication for Claimant's disability action began on August 3, 2013 because the Commissioner already determined that she was not disabled through August 2, 2013 in a prior disability proceeding, which was not appealed. (Tr. at 10, 94-111.)

Her current claims were initially denied on January 6, 2014 (Tr. at 114-123, 124-133, 241-246.) and again upon reconsideration on March 25, 2014. (Tr. at 249-255, 256-262.) Thereafter, Claimant filed a written request for hearing on April 9, 2014. (Tr. at 263-264.) An administrative hearing was held on August 18, 2015 before the Honorable J. Petri, Administrative Law Judge ("ALJ"). (Tr. at 58-89.) On December 18, 2015, the ALJ entered a decision finding Claimant had not been under a disability at any time from August 1, 2010 through the date of the decision. (Tr. at 7-27.) On February 15, 2016, Claimant sought review by the Appeals Council of the ALJ's decision. (Tr. at 6.) The ALJ's decision became the final decision of the Commissioner on February 15, 2017 when the Appeals Council denied Claimant's Request. (Tr. at 1-5.)

On April 11, 2017, Claimant timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.) The Commissioner filed an Answer and a Transcript of the Administrative Proceedings. (Document Nos. 9 and 10.) Subsequently, Claimant filed a Brief in Support of Judgment on the Pleadings (Document No. 12.); in response, the Commissioner filed a Brief in Support of Defendant's Decision. (Document

No. 13.) Consequently, this matter is fully briefed and ready for resolution.

**Claimant's Background**

Claimant was 37 years old as of the alleged onset date, and considered a "younger person" as of the date of the ALJ's decision and throughout the underlying proceedings. See 20 C.F.R. §§ 404.1563(c), 416.963(c). (Tr. at 66.) Claimant obtained her GED. (Tr. at 64.) Claimant last worked in 2010 as a phlebotomist; she had to resign because she "couldn't go into work." (Tr. at 67-68.)

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(f), 416.920(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability.

Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. §§ 404.1520(g), 416.920(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." Id. §§ 404.1520a(a), 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c), 416.920a(c). Those sections provide as follows:

> (c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of

Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

(4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. §§ 404.1520a(d)(1), 416.920a(d)(1).[1] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. §§ 404.1520a(d)(2), 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. §§ 404.1520a(d)(3), 416.920a(d)(3). The Regulations further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. §§ 404.1520a(e)(4), 416.920a(e)(4).

## **Summary of ALJ's Decision**

In this particular case, the ALJ determined that Claimant met the requirements for insured worker status through March 31, 2014. (Tr. at 13, Finding No. 1.) Moreover, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset date of August 1, 2010. (Id., Finding No. 2.) Under the second inquiry, the ALJ found that Claimant had the following severe impairments: chronic obstructive pulmonary disorder (COPD); polycythemia; major depressive disorder; generalized anxiety disorder; post-traumatic stress disorder (PTSD); and panic disorder without agoraphobia. (Id., Finding No. 3.) At the third inquiry, the ALJ concluded Claimant's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 14, Finding No. 4.) The ALJ then found that Claimant had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> She must avoid concentrated exposure to irritants such as fumes, odors, dust, and gases. She is limited to simple, routine tasks in a work related environment free of

6

fast paced production requirements, involving only simple, work-related decisions, with few if any, work place changes.

(Tr. at 16, Finding No. 5.)

At step four, the ALJ found Claimant was unable to perform any past relevant work. (Tr. at 19, Finding No. 6.) At the final step, the ALJ found that in addition to the immateriality of the transferability of job skills, Claimant's age, education, work experience, and RFC indicated that there were jobs that exist in significant numbers in the national economy that Claimant could perform. (Tr. at 20, Finding Nos. 7-10.) Finally, the ALJ determined Claimant had not been under a disability from August 1, 2010 through the date of the decision. (Tr. at 21, Finding No. 11.)

### Claimant's Challenges to the Commissioner's Decision

Claimant argues that the ALJ erred in two main areas: the first is that less than controlling weight was given to the opinions of Claimant's long-term treating psychiatrist, Dr. Malik Hasan by cherry picking the evidence instead of reviewing the record as a whole. (Document No. 12 at 5-6.) Dr. Hasan, a specialist, had been treating Claimant for her mental health problems for almost 25 years. (Id. at 7.) The ALJ ignored the other factors that must be considered when giving less than controlling weight to a claimant's treating source, and inappropriately assigned greater weight to the opinions of non-examining State agency physicians in a conclusory manner without proper analysis. (Id. at 8.)

Next, Claimant asserts that the ALJ relied upon the vocational expert's response to an improper hypothetical that did not fairly set out all of Claimant's impairments, particularly those concerning her nonexertional limitations. (Id. at 9.)

Claimant contends that the ALJ's decision is not supported by substantial evidence and asks this Court to reverse with instruction that the Commissioner pay Claimant's benefits, or

alternatively, to reverse and remand to correct the errors below before a different ALJ, and for other relief as deemed appropriate. (Id. at 10.)

In response, the Commissioner contends that the ALJ reasonably gave little weight to Dr. Hasan's opinions in accordance with the Regulations. (Document No. 13 at 10.) Dr. Hasan provided no medical or clinical findings to support his assessments, and further, the ALJ explained that Dr. Hasan's contemporaneous treatment notes were inconsistent with them, and was not the result of cherry picking the evidence. (Id. at 11-12.)

Moreover, the ALJ's reliance on the vocational expert's testimony was also reasonable: there was no other objective evidence supporting Claimant's allegations of disability; the hypothetical question accounted for all Claimant's credibly established limitations; and finally, due to Dr. Hasan's unsupported and inconsistent medical assessments, the ALJ crafted the appropriate RFC based on the evidence of record. (Id. at 13-14.)

The Commissioner argues that the final decision was based on substantial evidence and asks that it be affirmed. (Id. at 15.)

## The Relevant Evidence of Record[2]

The undersigned has considered all evidence of record, including the medical evidence, pertaining to Claimant's arguments and discusses it below.

Mohammad K. Hasan, M.D., Treating Psychiatrist:

Long before the relevant period, Claimant had been treating with Dr. Hasan since she was 17 years old. A treatment note dated January 23, 2013 indicated that Claimant was unkempt and cooperative during interview. (Tr. at 979.) Her mood was depressed, with a tearful affect. She had

---

[2] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

limited insight and judgment, but was alert, had linear thoughts and was oriented times three. (Id.) On April 17, 2013, Claimant presented for medication management with "symptoms are unstable; taking medication as prescribed without side-effects." (Tr. at 976.) She reported eating and sleeping well, but complained of increased anxiety and depression. (Id.) She was described as neat, tidy and cooperative, alert with normal psychomotor activity and speech, having logical thoughts, intact memory, oriented times three and fair insight and judgment; her condition did not warrant inpatient psychiatric admission. (Id.) On June 12, 2013, Claimant presented as "somewhat depressed and anxious" and was "trying to get her disability." (Tr. at 975.) She was taking her medications as prescribed without any side effects, eating and sleeping well; she again presented as neat, tidy and cooperative with euthymic mood and broad affect, however, insight and judgment were "good." (Id.)

On August 7, 2013, Claimant's symptoms were stable and she was taking her medication as prescribed without side effects (Tr. at 974.) She reported sleeping and eating well and denied suicidal or homicidal ideation. (Id.) Claimant presented as neat, tidy, and cooperative; had normal motor activity and speech; displayed a euthymic mood and a broad affect; and had a logical thought process, intact memory, and fair insight and judgment. (Id.) Dr. Hasan again noted that her condition did not warrant psychiatric admission. (Id.)

By November 26, 2013, Dr. Hasan noted that Claimant "continues to do rather poorly." (Tr. at 973.) She reported "doing fair", but she needed to "straighten out" her medications. (Id.) Her clinical examination remained unchanged from previous entries. (Id.) She again presented as neat, tidy, and cooperative; displayed normal motor activity and speech; had a euthymic mood and broad affect; denied suicidal or homicidal ideations; had intact memory; and fair insight and

judgment. (Id.) However, she also reported being tense, anxious and agitated, "but not as much." (Id.) Again, Dr. Hasan stated that inpatient psychiatric admission was not warranted, and "church and exercise also recommended." (Id.)

On December 18, 2013, Claimant "continues to do fair", though she reported "just having a hard time", as she continued to smoke about 2 packs per day. (Tr. at 972.) She slept and ate well, denied suicidal or homicidal ideation, and denied any side effects from her medications. (Id.) On examination, Dr. Hasan again noted that Claimant was neat, tidy, and cooperative; displayed normal motor activity and speech; had a euthymic mood and broad affect; denied suicidal or homicidal ideations; had intact memory; and fair insight and judgment. (Id.) Dr. Hasan noted that inpatient psychiatric admission was not warranted. (Id.)

On February 12, 2014, Dr. Hasan noted that Claimant continued to do fair, and that her "depression and anxiety are under much better control." (Tr. at 1212.) Although her affect was somewhat flat, she was oriented, had intact cognition, a normal thought process, no hallucinations, denied suicidal or homicidal ideation, and had fair insight and judgment. (Id.) Dr. Hasan noted that her panic was under much better control and she was strongly advised to stop smoking. (Id.) Dr. Hasan also noted that Claimant does not need help with personal chores or hygiene, but recommended that "there are no guns in the house" and that Claimant partake in church and exercise. (Id.) Dr. Hasan opined that Claimant is competent to handle affairs if disability is granted. (Tr. at 1213.)

Dated February 13, 2014, Dr. Hasan completed a medical assessment form regarding Claimant's ability to perform mental work-related activities. (Tr. at 1161-1163.) Dr. Hasan opined

that Claimant had a "fair"[3] ability to relate to co-workers; use judgment; function independently; understand, remember, and carry out detailed and simple, but not complex job instructions; and relate predictably in social situations. (Tr. at 1161-1162.) He also opined that Claimant had "poor" ability to follow work rules; deal with the public; interact with supervisors; deal with work stresses; maintain attention and concentration; understand, remember, and carry out complex job instructions; maintain personal appearance; behave in an emotionally stable manner; and demonstrate reliability. (Id.)

On April 14, 2014, Dr. Hasan filled out another medical assessment form of Claimant's ability to perform mental work-related activities. (Tr. at 1180-1181.) He opined that Claimant had a limited but not absent ability to follow work rules; relate to co-workers; interact with supervisors; function independently; understand, remember, and carry out detailed but not complex job instructions; maintain personal appearance; behave in an emotionally stable manner; and relate predictably in social situations. (Id.) Dr. Hasan also opined that Claimant had no useful ability to deal with the public; use judgment; deal with work stresses; maintain attention/concentration; understand, remember, and carry out complex job instructions; and demonstrate reliability. (Id.) Although specifically asked to describe any medical/clinical findings to support his assessment, Dr. Hasan did not do so. (Id.)

On May 30, 2014, Dr. Hasan noted that Claimant's symptoms were stable and that she was taking her medications without experiencing side effects. (Tr. at 1211.) Claimant was eating and sleeping well; denied suicidal or homicidal ideation; was neat, tidy, and cooperative; had normal

---

[3] For reference, the form defined "fair" as "ability to function in this area is limited but satisfactory"; "poor" as "ability to function in this area is seriously limited but not precluded"; and "none" as "no useful ability to function in this area." (Tr. at 1161.)

motor activity; normal speech; a euthymic mood and broad affect; intact memory; and fair insight and judgment. (Id.) Dr. Hasan again noted that inpatient psychiatric admission was not warranted. (Id.)

Two months later, Claimant presented to Dr. Hasan as stable; she denied any medication side effects, and was eating and sleeping well. (Tr. at 1210.) Again, Claimant appeared neat, tidy, and cooperative; had normal motor activity; normal speech; a euthymic mood and broad affect; logical thoughts; denied suicidal or homicidal ideation; had intact memory; and displayed fair insight and judgment. (Id.) Again, Dr. Hasan noted that no inpatient psychiatric admission was warranted. (Id.)

In September 2014 and January 2015, Dr. Hasan noted Claimant remained stable and her clinical examination remained unchanged. (Tr. at 1208-1209.)

On August 14, 2015, Claimant reported that her symptoms had worsened over the previous two months and she complained of decreased sleep, decreased concentration, and thoughts of suicide but no plan. (Tr. at 1389.) She reported taking medications as prescribed without side effects and eating and sleeping well. (Id.) Claimant presented as neat, tidy and cooperative, with a depressed mood and tearful affect, but logical thoughts, intact memory and fair insight and judgment. (Id.) Claimant was noted to be not acutely suicidal, homicidal, or psychotic and that her condition did not warrant in-patient admission; her Seroquel dose was decreased and Lamictal was added, and she was instructed to continue her other medication. Claimant was instructed to return the following Monday and if her condition had not improved, she would be admitted for inpatient treatment. (Id.)

Charleston Treatment Center (CTC):

On August 14, 2013, Claimant presented to CTC for ongoing treatment of cocaine abuse in remission. (Tr. at 1035.) She was talkative, had euthymic mood and affect, and was fully oriented. (Id.) In December 2013, Jack Estep, an addiction counselor, noted that Claimant's mood and affect were appropriate, she denied suicidal or homicidal ideation, and was oriented to all spheres. (Tr. at 1027.) In January 2014, Claimant displayed an anxious affect, but was fully oriented and denied suicidal or homicidal ideation. (Tr. at 1022.) Shortly thereafter, Claimant reported having a much better outlook on her treatment and appeared more positive. (Tr. at 1013.) On examination, Claimant was stable, had an appropriate mood and affect, and denied suicidal or homicidal ideation. (Id.)

In February 2014, Claimant remained stable, had an appropriate mood and affect, denied suicidal or homicidal ideation, and was fully oriented. (Tr. at 1004.) Her clinical examinations remained the same in March and April 2014. (Tr. at 1000, 1002.)

State Agency Psychological Consultants:

On December 27, 2013, Karl G. Hursey, Ph.D. reviewed the evidence of record and determined that Claimant had mental impairments of affective disorder and anxiety-related disorders, but that these mental impairments were not severe. (Tr. at 120-121.)

On March 18, 2014, Chester Frethiem, Psy.D., at the reconsideration level, reviewed the evidence of record and also concluded that Claimant's affective disorders and anxiety disorders were not severe impairments. (Tr. at 142-143.)

**The Administrative Hearing**

Claimant Testimony:

Claimant testified that she had to leave her job as a phlebotomist because she was having problems with panic and climbing stairs and keeping up with things in a timely manner. (Tr. at 38.) She tried to find other work, but was unsuccessful. (Tr. at 39.)

She has had COPD for about ten years; it causes her to lose her breath really easy and she coughs. (Id.) She uses three inhalers and a nebulizer to treat it. (Id.) As for her severe depression, Claimant stated that sometimes she just does not want to leave the house because she feels safe there, and she has panic attacks that feel like chest pains and that she is going to pass out. (Tr. at 39-40.) She also testified that her lips go numb and that she just wants to run and hide. (Tr. at 40.) She testified that she has panic attacks daily, and they come out of nowhere. (Tr. at 51.) She estimated that the attacks last about thirty minutes to an hour. (Id.) Claimant testified that she has bipolar disorder with extreme highs and lows and she is afraid of being around people and crowds. (Tr. at 40.)

Her depression has caused her to lose interest in being around her friends as well as sleep disturbances. (Tr. at 41, 42.) It also makes her feel guilty for having depression. (Tr. at 42.) Claimant testified that she has no energy or a good memory, but she does not think of hurting herself. (Id.) She testified that she has difficulty concentrating. (Tr. at 43.) She has difficulty getting motivated and going to appointments; she dreads appointments and will procrastinate. (Tr. at 51.)

Claimant stated that she has been hospitalized once for mental health issues. (Id.)

Claimant testified that she is a single mom and that she "can do a lot. I push myself a lot more than what I want or what I can." (Tr. at 45.) Claimant testified that it is difficult for her to deal with people, but she is unsure why. (Tr. at 47.) She does not like change, but as a mother, she has to try to do it. (Id.)

14

Claimant attends church occasionally and gets along with family and friends generally. (Id.) She draws with her daughter. (Tr. at 48.) She can drive, but does not drive far usually; she can cook and do the dishes and other household chores, and shop outside the home for things. (Tr. at 48, 49.) Many times, however, she has left a store without her stuff because she has trouble going out. (Tr. at 52.)

On a typical day, Claimant gets up in the mornings and wakes her daughter up and makes her breakfast. (Tr. at 49.) Claimant only eats breakfast, and will answer telephone calls and watch television, listen to music and will read the paper once in a while. (Tr. at 50.) She retires for bed around 8:30 p.m. or 9:00 p.m. (Id.) She does not drink alcohol or use drugs. (Id.)

Cecelia Thomas, Vocational Expert ("VE") Testimony:

The ALJ asked the VE to consider a hypothetical individual of Claimant's same age, education, and work experience who could perform work at all exertional levels with the following limitations: no concentrated exposure to irritants such as fumes, odors, dust, and gases; no more than simple, routine tasks in a work environment free of fast-paced production requirements involving only simple work-related decisions and few, if any, workplace changes. (Tr. at 82-83.) The VE testified that an individual with the above-stated limitations could perform work as a dining room attendant, janitor, and housekeeper, all medium, unskilled jobs. (Tr. at 83-84.)

Claimant's counsel asked the VE that in addition to the ALJ's first hypothetical [described *supra*], where the individual had no useful ability to function with the public; had no useful ability to function using judgment; had no useful ability to deal with stress; had no useful ability to function maintaining attention and concentration, and would be off up to 20% of any given workday; and had no useful ability to demonstrate reliability, where the individual would be

missing work on an increased basis of at least two days a month. (Tr. at 87.) In response, the VE

testified that no jobs at any level would be available. (Tr. at 87-88.)

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying

the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was

defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular
> conclusion. It consists of more than a mere scintilla of evidence but may be
> somewhat less than a preponderance. If there is evidence to justify a refusal to direct
> a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d

640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving

conflicts in the evidence, however, the Court determines if the final decision of the Commissioner

is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th

Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape

their duty to scrutinize the record as a whole to determine whether the conclusions reached are

rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists,

the Court must affirm the Commissioner's decision "even should the court disagree with such

decision." Blalock, 483 F.2d at 775.

**Analysis**

As previously stated, Claimant argues the ALJ inappropriately devalued the opinions of

Claimant's treating psychiatrist, Dr. Hasan. (Document No. 12 at 5-8.)

The Evaluation of Opinion Evidence:

The Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Ultimately, it is the responsibility of the Commissioner, not the court, to review the case, make findings of fact, and to resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1994).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). These factors include: (1) Length of the treatment relationship and frequency of evaluation, (2) Nature and extent of the treatment relationship, (3) Supportability, (4) Consistency, (5) Specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(c)(2), 416.927(c)(2).

The ALJ reviewed Claimant's mental health treatment, noting that she had treatment "starting back in 1998 and 1999." (Tr. at 17.) Additionally, the ALJ acknowledged that Claimant received consistent mental health treatment from April 2012 through August 2013, and further that she had received emergency treatment in December 2011 because of her mental health impairments. (Id.) The ALJ contrasted this with "treatment notes from after August 2013 show that the claimant's mental health symptoms were improving with therapy and medication." (Id.) Moreover, the treatment notes from August to December 2013 indicated that Claimant had stable symptoms and taking her medication as prescribed. (Tr. at 17-18.) The ALJ acknowledged that Claimant "was continuing to do poorly in November 2013, though she later stated that she was doing fair but needed to fix her medications." (Tr. at 18, 973-974.) However, the record indicated that Claimant was doing well and making progress from December 2013 to April 2014, though "at times appeared anxious, but was mostly noted as having a stable mood, having no suicidal or homicidal ideations." (Tr. at 18, 1000, 1002, 1004, 1006, 1013, 1026, 1033.)

In September 2014, the ALJ noted that her mental health was fair and that she had stable symptoms in January 2015. (Tr. at 18, 1208-1209.) In June 2015, the ALJ noted further that Claimant "had no complaints, and was noted as having normal sleep, energy, and concentration", though in August 2015, she complained of increased depression and anxiety, "but was still noted as having intact memory and fair insight and judgment. The treating doctor noted that the claimant did not warrant inpatient psychiatric admission." (Tr. at 18, 1389-1390.)

The ALJ gave "little weight" to Dr. Hasan's opinions as referenced in the two medical assessments provided in February and April 2014, described in detail *supra*. (Tr. at 18.) The ALJ reasoned that Dr. Hasan "did not support his opinion with an explanation, and his opinion is not

supported by the record, which showed that the claimant was repeatedly assessed with intact memory and normal insight and judgment. It also showed that the claimant responded well to therapy and medication." (Tr. at 18-19.)

The ALJ gave "some weight" to the opinions provided by the State agency physical and mental consultants, as the record demonstrated that Claimant's impairments were severe, though agreed with their opinions that her impairments were not disabling. (Tr. at 19.)

From the aforementioned, the ALJ provided appropriate and thorough explanation for giving little weight to Dr. Hasan's opinions regarding Claimant's mental impairments under Fourth Circuit jurisprudence. Cook v. Heckler, 783 F.2d 1168 (4th Cir. 1986); Hammond v. Heckler, 765 F.2d 424 (4th Cir. 1985). Moreover, the ALJ's thorough discussion of the voluminous mental health treatment afforded to Claimant by her treating psychiatrist corresponds to the factors promulgated under the Regulations when evaluating a treating source opinion. Ultimately, after review of the evidence, including the objective medical records, the opinion evidence, in addition to Claimant's allegations concerning the limiting effects of her nonexertional impairments and other symptoms, the ALJ provided "good reasons" for giving Dr. Hasan's opinions little weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Accordingly, the undersigned **FINDS** that the ALJ's evaluation of Dr. Hasan's opinions is based upon substantial evidence.

The RFC Assessment:

Residual functional capacity represents the *most* that an individual can do despite his limitations or restrictions. See Social Security Ruling 96-8p, 1996 WL 3744184, at *1 (emphasis in original). The Regulations provide that an ALJ must consider all relevant evidence as well as

consider a claimant's ability to meet the physical, mental, sensory and other demands of any job; this assessment is used for the basis for determining the particular types of work a claimant may be able to do despite his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). The RFC determination is an issue reserved to the Commissioner. See Id. §§ 404.1527(d), 416.927(d).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physician's opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

Following the discussion of the medical evidence regarding Claimant's physical and mental impairments, her allegations and testimony of same, and the evaluation of the opinion evidence, the ALJ summarized the RFC assessment:

> In sum, the above residual functional capacity assessment is supported by the record which tends to show that the claimant's limitations from her respiratory problems, depression, and anxiety do not prevent the claimant from performing a less than a full range of all exertional work. Although the claimant does have limitations because of her severe impairments, these limitations are not so great as to rise to the level that the claimant alleged.

(Tr. at 19.)

The RFC assessment concerning both Claimant's physical and mental impairments included the required narrative discussion that allows for meaningful judicial review and with respect to the findings of fact and conclusions provided in the written decision, it is clear that the ALJ complied with the mandate to "build an accurate and logical bridge from the evidence to his conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)).

Finally, based on the little weight assigned to Dr. Hasan's opinion, the ALJ was not duty

bound to pose a hypothetical question to the VE including those limitations. Hypothetical questions need only incorporate those limitations that an ALJ accepts as credible and that are supported by the record. See Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). As stated above, the reconciliation of conflicting evidence was for the ALJ to resolve, not this Court. See SSR 96-8p, 1996 WL 3741784, at *7.

In sum, the undersigned **FINDS** that the ALJ's RFC assessment is supported by substantial evidence, and further **FINDS** that the decision finding Claimant was not disabled is supported by substantial evidence.

## Recommendations for Disposition

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Claimant's request for judgment on the pleadings (Document No. 12.), **GRANT** the Defendant's request to affirm the ALJ's decision (Document No. 13.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is

made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Goodwin, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: October 6, 2017.

Omar J. Aboulhosn
United States Magistrate Judge